**David R. MERRILL et al.**

v.

**FEDERAL OPEN MARKET COMMITTEE OF the FEDERAL RESERVE SYSTEM, Appellant.**

**No. 76–1379.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 28, 1976.
Decided Nov. 10, 1977.

Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U.S. Atty., and Thomas G. Wilson, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellant.

Victor H. Kramer, Washington, D.C., with whom Charles E. Hill and Rangeley Wallace, Washington, D.C., were on the brief, for appellee.

Before McGOWAN, LEVENTHAL and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge McGOWAN.

McGOWAN, Circuit Judge:

Appellee instituted in the District Court a Freedom of Information Act (FOIA) suit in order to challenge a regulation, 12 C.F.R. § 271.5 (1975), under which appellant Federal Open Market Committee (FOMC) of the Federal Reserve System delays disclosure of certain of its records. On cross motions for summary judgment, the District Court held that the monthly instructions given by the Committee to the Manager of its Systems Open Market Account, which guide his dealing in securities, do not fall within any exemption of the Act, and therefore must be made publicly available upon adoption.

The issue on appeal is the scope of Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5) (1970).[1] That exemption affords civil discovery privileges to intra-agency memoranda, such as the documents in dispute in this case, which would otherwise be subject to disclosure under FOIA.[2] We conclude that the materials sought by appellee are not encompassed by the government's "executive" or deliberative process privilege. Since appellant is unable to assert any other privilege which would exempt these materials from civil discovery, we hold that they are not within the purview of Exemption 5; and affirm the judgment of the District Court.

I

The Federal Open Market Committee (FOMC), composed of the Board of Governors of the Federal Reserve System and five representatives of Federal Reserve Banks, has responsibility under the Federal Reserve Act for directing Federal Reserve

---

1. The District Court also held that the materials sought here do not fall within § 552(b)(2), exempting material "related solely to the internal personnel rules and practices of an agency." This finding is not challenged on appeal.

2. The Freedom of Information Act, 5 U.S.C. 552 (Supp.IV, 1974), provides in pertinent part:

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

\* \* \* \* \* \*

(D) \* \* \* statements of general policy \* \* \* formulated and adopted by the agency.

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

\* \* \* \* \* \*

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; \* \* \* unless the materials are promptly published and copies offered for sale.

(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

(b) This section does not apply to matters that are—

\* \* \* \* \* \*

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

Bank purchases and sales of securities in the domestic securities market. 12 U.S.C. § 263 (1970). The Committee's authority to direct open-market operations is to be utilized "with a view to accommodating commerce and business and with regard to their bearing upon the general credit situation of the country." *Id.* § 263(c). To implement this regulatory responsibility, FOMC has established a Systems Open Market Account, which is a combined investment pool for all Reserve Banks. An Account Manager, appointed by FOMC, conducts open market operations in accordance with instructions from FOMC. These instructions are received in the form of a Domestic Policy Directive, supplemented by a statement of objectives for rates of growth of monetary aggregates (and for the federal funds interest rate) expressed in terms of tolerance ranges.[3] A Directive is issued after each meeting of FOMC, which typically takes place once a month. On occasion, changing conditions require FOMC to amend its Directive or tolerance ranges before its next monthly meeting.

The Directive guides the Account Manager in his open-market operations by stating, for example, whether growth in monetary aggregates (which is achieved by open-market purchases)[4] should be moderate or rapid. In addition to the Directive and tolerance ranges, the Account Manager's operations are guided by daily communication with at least one member of FOMC. However, the Account Manager has discretion as to the method of implementing FOMC policy. He has authority to purchase or sell any quantity of a variety of securities, or he may decide to undertake no transactions at all.

Appellee, by means of a letter dated March 7, 1975, requested access under FOIA to 1) records of policy actions[5] taken by FOMC at its meetings in January 1975 and February 1975, including instructions to the Account Manager, and 2) Memoranda of Discussion at these meetings.[6] The FOMC Secretary replied on March 21, 1975 that records of policy action would be made publicly available 45 days after their adoption, pursuant to 12 C.F.R. § 271.5 (1976).[7] While the reply did not respond to appellee's contention that this deferred disclosure violated FOIA, it did state that FOMC considered its Memoranda of Discussion to be exempt under Exemption 5 from FOIA's disclosure requirements.

Upon appeal to the agency, Robert Holland, a member of the Board of Governors of the Federal Reserve System, released the

---

3. "Monetary aggregates" refer to definitions of the nation's money supply. The "federal funds interest rate" is the rate at which commercial banks will lend excess reserves to one another on an overnight basis.

4. These open-market operations are an instrument of monetary economic policy. When the Account Manager purchases securities, the total volume of commercial bank reserves is increased. This results in increased loans and investments, and decreased interest rates, thus affecting spending and investment in the economy. When the manager sells securities, the money supply decreases and the process is reversed.

5. The "records of policy actions" requested include the Domestic Policy Directives adopted at the January 1975 and February 1975 FOMC meetings, the Minutes of Actions for each of these meetings (which include the Directive issued at the meetings), and the "Record of Policy Actions" for each of these meetings. The latter document includes the Directive, and, less frequently, other policy statements (entitled Authorization for Domestic Open Market Operations, the Foreign Currency Directive, and the Authorization for Foreign Currency Operations) adopted by FOMC. In addition, the "Record of Policy Actions" explains the rationales behind the foregoing policy decisions and the votes thereon by each member of FOMC.

6. FOMC no longer issues Memoranda of Discussion, which were detailed accounts of FOMC meetings. *Washington Post*, May 25, 1976, § D, pp. 8–9; Appellant's Brief at 12.

7. When appellee first requested the material in dispute in this case, 12 C.F.R. § 271.5 provided that records of agency action, including Domestic Policy Directives, would not be made available until 90 days after the Directives are adopted by the Commission. The time of delay was changed to 45 days by amendment of the regulation on March 24, 1975, 40 Fed.Reg. 13204. FOMC deferral policy has changed again since this suit was instituted, *see* p. 782 *infra.*

requested records of policy actions on April 23, 1975 (45 days having elapsed since their adoption), but affirmed the Secretary's decisions that such delay in public release of the records of policy action was warranted, and that the requested Memoranda of Discussion were exempt under Exemption 5. Holland's letter constituting final agency action, appellee then filed suit in the District Court, seeking declaratory and injunctive relief against the operation of 12 C.F.R. § 271.5, and an order directing FOMC to release the parts of the Memoranda of Discussion claimed by appellee to be nonexempt under FOIA.

In granting appellee's motion for summary judgment, the District Court rejected FOMC's contentions that the records of policy action (including Domestic Policy Directives) fell under the fifth FOIA exemption, and that release 45 days subsequent to adoption constituted "prompt" disclosure as required by (a)(2)(B) and (a)(3) of the Act. It therefore enjoined the operation of 12 C.F.R. § 271.5 insofar as it permitted delays in disclosure of FOMC policy actions. Holding that the Domestic Policy Directive is a statement of general policy within the meaning of 5 U.S.C. § 552(a)(1)(D), the court ordered FOMC to publish it in the Federal Register upon its adoption. Memorandum Opinion at 17–19. Statements and interpretations of other FOMC policy actions were ordered to be made publicly available upon adoption as statements and interpretations of policy, pursuant to 5 U.S.C. § 552(a)(2)(B), (a)(3). *Id.* at 19–21.[8]

After the District Court entered its order, FOMC changed its deferral policy from that described in the challenged regulation. All records of policy action are now made available "within a few days" following the FOMC meeting the month after the Directive is adopted.[9] The parties agree that this constitutes compliance with the District Court's order only with respect to one of the requested documents, that entitled "Records of Policy Actions." This document, described in note 6 *supra*, is not completed and formally adopted until the meeting subsequent to the meeting to which it relates, and, according to appellant's new deferral policy, is disclosed within a few days of this formal adoption.[10]

However, the District Court's order also requires *separate* and *immediate* disclosure, promptly after the meeting at which they are formulated, of statements and interpretations of FOMC policy, notably the Domestic Policy Directives and their accompanying tolerance ranges issued to the Account Manager. FOMC challenges on appeal that portion of the District Court's order directing it to disclose these documents upon their adoption. Appellant asserts that it may defer public availability of these records because they are encompassed by Exemption 5 of the Act.

## II

FOIA provides for prompt mandatory disclosure of statements of policy and interpretations of policy, unless such matters fall within one of the specific exemptions of the Act.[11] The agency carries the burden of

---

8. The District Court's ruling with respect to the requested Memoranda of Discussion (now discontinued, *see* note 6 *supra*) is not at issue in this appeal. The court held that appellee was entitled to "reasonably segregable factual portions" of these documents under 5 U.S.C. § 552(b)(5). The court has not yet ruled on the memoranda which have been submitted to it for *in camera* inspection pursuant to this provision.

9. Brief of Appellant at 14; *Washington Post*, May 25, 1976, § D, p. 9. The Directive is published in the *Federal Register*; the other records are made public in a press release. *Id.*

10. Besides statements and interpretations of policy, the "Record of Policy Actions" apparently contains material relating to the deliberative process, *see* note 5 *supra*. Appellant has chosen to make this material available after its formal adoption and has not challenged that portion of the District Court's order requiring it to do so.

11. *See* 5 U.S.C. § 552(a)(2): "Each agency, in accordance with published rules, shall make available for public inspection and copying— * * * (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; * * * unless the materials

showing that requested information falls within an exemption. 5 U.S.C. § 552(a)(4)(B).

██ Exemption 5 of FOIA protects from mandatory disclosure "intra-agency memorandums . . . which would not be available by law to a party other than an agency in litigation with the agency." This exemption incorporates the civil discovery law: if the document sought would be routinely available to a party in civil discovery, the fifth exemption will not protect it from prompt mandatory disclosure. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 85–86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). If a document is, however, privileged from civil discovery, it is exempted from mandatory disclosure under FOIA even if, in a particular case, a party in litigation could overcome the privilege by a showing of need. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 n. 16, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

██ This exemption incorporates the familiar "executive" privilege attaching to predecisional communications which reflect the policymakers' deliberative processes. *Id.* at 150–51, 95 S.Ct. 1504. This privilege is based on the view that the quality of a decision would be adversely affected if deliberative processes were exposed to public view: such exposure would inhibit discussions by policymakers and their advisors. *Id. See also Environmental Protection Agency v. Mink, supra*, at 87, 89, 93 S.Ct. 827.

FOMC contends that the disputed materials (the Directives and the tolerance ranges) are predecisional records protected from disclosure by Exemption 5. It is argued that since the Account Manager has a choice in the method of implementing the policy guidelines contained in these documents, and since he consults daily with at least one FOMC member, the actual policy decision is not adopted until he acts, by buying or selling securities on the open market.

██ We remain unpersuaded that these documents are not FOMC's effective policy decisions until the dealing occurs. While the Account Manager retains considerable leeway in accomplishing the policy established by FOMC, he lacks authority in his position as a subordinate to disregard the Committee's policies. The Directive and tolerance ranges by practical necessity are general instructions to the Manager. That the instructions are general and thereby allow the manager some discretion in their implementation does not undermine the fact that those instructions embody the policy of FOMC.[12] A rule that these policy instructions are not decisions until they are executed would balloon the boundaries of the privilege for deliberative memoranda far beyond its purposes. Many government policies take years to implement.

Moreover, no harm to the consultative functions of FOMC results from disclosing the policy actually adopted by it before the policy is executed.[13] FOMC's instructions

are promptly published and copies offered for sale." Obviously, if the materials are not "promptly published" they must be "promptly" made available for inspection and copying. The concept of "promptly available" also appears in 5 U.S.C. § 552(a)(6)(C). *See also* 5 U.S.C. § 552(a)(4)(D), giving these cases "precedence on the docket" in the District Court.

12. Nor can can it be said that these documents are not "adopted" until executed because FOMC can amend them between meetings through consultations with the Manager. To the extent that deliberative communications are exchanged after the vote at the meeting and prior to a new decision which amends the previous vote, they would fall within Exemption 5. However, that a new policy can super-

sede a prior policy before the latter is executed does not mean that the original policy decision voted by an agency is predecisional. The decision is already reached and its disclosure "poses a negligible risk of denying to agency decisionmakers the uninhibited advice which is so important to agency decisions." *NLRB v. Sears, Roebuck & Co., supra* at 152 n.19, 95 S.Ct. at 1517 (1975).

13. As we have previously stated, timing alone does not determine whether a specified document is protected under the deliberative privilege: "pre-decisional materials are not exempt merely because they are pre-decisional; they must also be part of the agency give-and-take—of the deliberative process—by which the decision itself is made," *Vaughn v. Rosen,*

to the Account Manager are the result, rather than a part, of the deliberative process. While executive privilege would protect the frank communications which occur *before* FOMC votes on the Directive and the tolerance ranges, it does not protect from disclosure the policy decision itself.[14] We agree with the District Court that the Directives and the tolerance ranges are not predecisional, deliberative communications: they rather embody FOMC's effective policy decision. Accordingly, they cannot fall within Exemption 5's incorporation of the deliberative process privilege.[15]

FOMC urges that its policy instructions to the Account Manager, even if not considered predecisional and part of the deliberative process, fall within Exemption 5 because Congress intended to protect even final decisions from *premature* disclosure. Disclosure of the Directives before execution is asserted to be premature because it would allegedly affect adversely FOMC's ability to control monetary policy.

To support the assertion that the exemption was designed to protect final plans from premature disclosure, appellant quotes

173 U.S.App.D.C. 187, 194, 523 F.2d 1136, 1144 (1975).

**14.** We note that FOMC voluntarily exposes the Directive to public view after the meeting succeeding the meeting when the Directive was first formulated and issued to the Account Manager. *See* note 7 *supra.* By this action, it implicitly acknowledges that the exposure will not be harmful to its decisionmaking process and the quality of the decision itself.

**15.** FOIA requires that "statements of general policy" adopted by the agency be published in the *Federal Register*, 5 U.S.C. § 552(a)(1)(D), and that "statements of policy" not published be made available for public inspection and copying, *id.* § 552(a)(2)(B). Our conclusion that the materials in dispute in this case represent effective policy decisions not only brings them within the general disclosure requirements of FOIA, as appellant concedes, *see* Memorandum Opinion at 10 n.16, but also makes the executive privilege aspect of Exemption 5 unavailable. This conclusion does not rest on the assumption that Exemption 5 can never apply to materials otherwise subject to disclosure under § 552(a)(1)(D) or § 552(a)(2)(B). First, the executive, or deliberative process, privilege is not the only civil discovery privilege incorporated by Exemption

part of the House Report's discussion of Exemption 5, which states:

[a] Government agency cannot always operate effectively if it is required to disclose documents or information which it has received or generated before it completes the process of awarding a contract or issuing an order, decision or regulation. This clause is intended to exempt from disclosure this and other information and records wherever necessary without, at the same time, permitting indiscriminate administrative secrecy.

H.Rep. No. 1497, 89th Cong., 2d Sess. p. 10 (1966), U.S.Code Cong. & Admin.News 1966, pp. 2418, 2427.

■ We cannot infer from this language that Congress contemplated that a final policy decision such as the one at issue here could be kept secret until executed. The policy directives are "issued" to the Account Manager upon adoption, and they become immediately effective and govern his open-market transactions. The House Report does not indicate that a statement of agency policy may be withheld subsequent to the date it becomes effective.[16]

5, *see, e. g., NLRB v. Sears, Roebuck & Co., supra* at 159–60, 95 S.Ct. 1504 (exemption through incorporation of attorney's work product privilege in Exemption 5). Second, this privilege would be available even to policy statements where it can be shown that these meet the requirements for application of the executive privilege. Admittedly, it is difficult to conceive of a statement which is simultaneously a *policy adopted* by an agency and a *predecisional* communication made as part of the deliberative process. Even if the deliberative process privilege incorporated by Exemption 5 can never operate to exempt statements of effective agency policy, as the District Court apparently concluded, *see* Memorandum Opinion at 16 ("Directives are not exempt from FOIA but are statements of general policy within the meaning of subsection (a)(1)(d)"), and as the Supreme Court has suggested, *see* citations in note 17 *infra*, it can still operate to exempt materials otherwise subject to disclosure under other provisions of FOIA.

**16.** Indeed, at one point the House Report implies that a document would not be protected past its effective date: "[T]here may be plans which, even though finalized, cannot be made freely available in advance of the effective date without damage to [public and private] inter-

The Senate Report on the exemption also gives no indication that the effective, working policy of an agency may be withheld. It states:

> It was pointed out in the comments of many of the agencies that it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny. It was argued, and with merit, that efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to "operate in a fishbowl." The committee is convinced of the merits of this general proposition, but it has attempted to delimit the exception as narrowly as consistent with efficient Government operation.

S.Rep. No. 813, 89th Cong., 1st Sess. p. 9. Manifestly, Congress did not intend to expose all intra-agency communications to public view. However, this passage illuminates its concern centering on predecisional materials, the exposure of which would be premature because injurious to the deliber-

ative process. It does not indicate that a final and effective policy decision may be withheld.

■ Moreover, even if it could be inferred from the legislative history excerpted above that delay in disclosure of certain operative agency policies was contemplated by Exemption 5,[17] the agency claiming exemption would be required to demonstrate that the material sought "would not be available by law to a party." Congress has clearly stated that the criterion for application of the fifth exemption to the disclosure requirements of FOIA is whether the material sought would "routinely be disclosed to a private party through the discovery process in litigation with the agency." H.R. Rep. No. 1497, 89th Cong., 2d Sess. p. 10 (1966), U.S.Code Cong. & Admin.News 1966, p. 2428. Thus, even if it appeared that Exemption 5 was written with precisely the situation of the instant case in view,[18] we must require disclosure unless it is demonstrated that the material in dispute would not be available under the rules of civil discovery.[19] Ambiguous inferences from

ests." H.R.No.1497, 89th Cong., 2d Sess. (1966) p. 5, U.S.Code Cong. & Admin.News 1966, p. 2422. We do recognize, however, that this statement may contemplate delay in disclosure of certain final decisions before these become operative agency policy. Given our conclusion that the materials in dispute in this case are final and effective agency policy when issued, we need not reach appellant's assertion, challenged by appellee, that Exemption 5 may sometimes operate to allow delay, rather than permanent non-disclosure, of intra-agency memoranda.

17. *But see NLRB v. Sears, Roebuck & Co., supra* at 153, 95 S.Ct. at 1518 ("We should be reluctant . . . to construe Exemption 5 to apply to documents described in 5 U.S.C. § 552(a)(2)."); *Renegotiation Board v. Grumman Aircraft,* 421 U.S. 168, 186–88, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975) (indicating that opinion within the deliberative process exemption cannot qualify as "final opinion" under § 552(a)(2)(A)).

18. Appellant points out that the Acting General Counsel of the Treasury Department, in his testimony on the proposed FOIA, argued that premature disclosure of "[i]nformation as to purchases by the Federal Reserve System . . . of Government Securities in the market . . . could have . . . serious effects on the

orderly handling of the Government's financing requirements," Appellant's Brief at 24–25. This testimony together with the statements in the committee reports on FOIA are said to show "plainly" that Exemption 5 was intended "to protect against premature disclosure." Of course, the mere fact that both the Acting General Counsel of the Treasury and the committee reports use the word "premature" does not imply that the latter was addressing the specific concern voiced by the former. Moreover, we have already indicated, *see* note 16 *supra,* that delay in disclosure of certain policies and decisions *until they become effective* may be within the purview of Exemption 5.

19. It is an open question whether Exemption 5 was intended to incorporate all common law privileges. We note that several of these privileges are included in other exemptions to the Act. *See, e. g.,* 5 U.S.C. § 552(b)(7) (privilege for investigatory files). The Supreme Court concluded that the exemption extended to the deliberative privilege and the attorney's work product privilege only after satisfying itself that these privileges were in the Congressional contemplation. *NLRB v. Sears, Roebuck & Co., supra* at 150, 154, 95 S.Ct. 1504 (1975). We need not reach what further privileges Exemption 5 embraces in view of our conclusion that no established privilege would encompass

legislative history cannot supplant the clear mandate of the language of the statute.

■ In addition to its assertion of executive privilege, which we have rejected, FOMC urges that its policy instructions meet the criterion of Exemption 5 because they would allegedly be protected from civil discovery by a governmental privilege for "official information." "Official information" is an umbrella term which encompasses several specifically identified privileges attaching to certain defined categories of government information, including information concerning state secrets, information obtained from informers, and information contained in law enforcement investigatory files.[20] The cases relied on by FOMC as the basis for its claim of an official information privilege with respect to the instant materials fall into two categories: 1) cases recognizing a privilege for statements of witnesses given to the government upon promises of confidentiality, and 2) cases recognizing a privilege for law enforcement investigatory files. We conclude that the rationales behind these privileges are inapplicable to the documents at issue in this case. We therefore cannot accept the contention that these specific privileges, when subsumed under the banner of official information, become precedent for assertion of a privilege for FOMC's policy standards.

There does exist a governmental privilege attaching to statements given by individuals to the government on a promise of confidentiality, which statements are then used by the government in arriving at policy. See, e. g., Machin v. Zuckert, 114 U.S.App. D.C. 335, 316 F.2d 336 (1963) cert. denied, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963).[21] This privilege is based upon the need for the government to obtain otherwise unavailable information in order to discharge properly its responsibility to make policy decisions. See, e. g., Brockway v. Department of the Air Force, 518 F.2d 1184, 1194 (8th Cir. 1975). Efficient fact-gathering is an essential first step in the decisionmaking process. The privilege for witnesses rests on the recognition that the quality of that process as well as the decision reached is impoverished as access to relevant facts decreases.[22] This privilege cannot be extended to reach the instant situation, because neither the fact-gathering ability nor the decisionmaking process of FOMC would be undercut by disclosure of these final policy decisions.

The second category of cases relied upon by FOMC identifies a privilege for governmental documents such as investigatory files, disclosure of which would hamper law enforcement efforts[23] or prejudice another

---

the materials in dispute here, and that therefore Congress could not have intended their exemption.

**20.** Official information has also been used to connote the privilege surrounding information revealing the deliberative processes of government. See generally Cleary, McCormick's Handbook of the Law of Evidence, 229–242 (1972), Wright & Miller, 8 Federal Practice and Procedure § 2019 (1970).

**21.** The Machin decision held that the Secretary of the Air Force was not required to disclose during pre-trial discovery an investigative report concerning an airline crash.

**22.** Appellant cites language in Machin that disclosure of the material in that case "would hamper the efficient operation of an important Government program", 114 U.S.App.D.C. at 338, 316 F.2d at 339, as support for its contention that an "official information" privilege should be found to encompass the material in

dispute in this case. We decline to transform such dictum into precedent for the existence of a broad rule that any information, disclosure of which might impede a particular government program, is "normally privileged in the civil discovery context;" NLRB v. Sears, Roebuck & Co., supra at 149, 95 S.Ct. at 1515–16.

Appellant's position ultimately rests on the claim that its information is privileged and thereby exempt because its disclosure would allegedly affect adversely the public interest. This argument runs counter to Congress' express rejection of the public interest standard in favor of the broad disclosure policy embodied in the FOIA. We cannot perceive anything in the legislative history to persuade us that Congress intended in Exemption 5 to reintroduce the rejected public interest standard.

**23.** See Capitol Vending Co. v. Baker, 35 F.R.D. 510 (D.D.C.1964) (documents sought from Attorney General need not be disclosed because they related to ongoing criminal investigation).

pending, related judicial proceeding.[24] Again, the reasons supporting the privilege in these cases would not be applicable to the policy decisions at issue here. Disclosure here would not affect government law enforcement activities or prejudice a judicial proceeding.

■ FOMC also seeks to bring the instructions contained in the Domestic Policy Directives and the tolerance ranges under Exemption 5 by claiming that this information would fall within the privilege accorded confidential commercial information under F.R.Civ.P. 26(c)(7). However, appellant fails to present a single case where information generated by the *government* fell within this privilege. At most, only a rough analogy could be drawn between commercial information, protected for reasons of equity in the private sector, and the instruction sought here. In view of our mandate to implement the Act's general philosophy of full agency disclosure unless information is exempt under clearly delineated statutory language," S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965), we decline to create, by rough analogy, a privilege not in existence at the time FOIA was enacted, and then incorporate this privilege into an exception to the overriding command of that Act.

### III

FOIA requires that information such as the policy statements at issue in this case must be publicly released upon their adoption by the agency unless they fall within a specific FOIA exemption. For reasons stated above, Exemption 5 does not encompass the information that the District Court has ordered FOMC to make available. We note in passing that Exemption 3 allows nondisclosure of material specifically exempted by statute. Should Congress determine that release of the Directives, tolerance ranges and other FOMC documents sought in this suit will impede implementation of national monetary policy, it has the option of enacting for this material a specific statutory exemption from the operation of the Freedom of Information Act, or a specific statutory authority for deferral, amounting to an exemption from the prompt availability requirement. But the making of such exceptions is the function of the legislature, not the court.

The judgment appealed from is affirmed.

*It is so ordered.*

24. *See Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962); *Rosenblatt v. Northwest Airlines, Inc.*, 54 F.R.D. 21 (S.D.N.Y.1971).