**ISOMETRICS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 222–84C.

United States Claims Court.

June 4, 1984.

Peter M. Kilcullen, Washington, D.C., for plaintiff; Robert J. Martinez, Washington, D.C., of counsel.

J. Weili Cheng, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

TIDWELL, Judge:

On May 3, 1984 plaintiff filed with this court a Motion for Preliminary Injunction and a Complaint Seeking Declaratory and Injunctive Relief against the awarding of an Air Force procurement of aircraft refueling hydrant hose trucks. Defendant countered with a Motion to Dismiss for lack of jurisdiction which was argued and decided by the court on May 10, 1984.[1] The court denied Defendant's Motion to Dismiss on Count I of plaintiff's Complaint and reserved judgment on Count II.[2]

On May 15, 1984, defendant filed a Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Preliminary Injunction. A hearing was held on the Motion for Preliminary Injunction on May 24, 25 and 29, 1984. Based on a thorough review of plaintiff's claims and the evidence presented at the hearing, together with a careful review of several *in camera* submissions, the court grants Plaintiff's Motion for Preliminary Injunction.

## FACTS

In August of 1983 the United States Air Force, at Warner-Robbins Air Logistics Center, Robbins Air Force Base, Georgia, issued a Determinations and Findings justifying a negotiated procurement procedure to procure aircraft refueling hydrant hose trucks.[3] On January 18, 1984, five months after the Determination and Findings authorizing the purchase by negotiation was issued and approximately two years after the need therefor came to light, the Air Force issued RFP FD 2060–83–96301 for the procurement of the hydrant hose trucks.[4] Solicitations were sent to 27 potential offerors. There is doubt as to whether the procurement, as actually accomplished to date was negotiated pursuant to DAR 3–100, *et seq.*, or whether a two-step procurement was used pursuant to DAR 2–501, *et seq.*, or whether a "modified negotiated" process was utilized. Plaintiff argued at a May 4, 1983 status conference with some merit that it was a two step procurement. Defendant at that meeting had no idea but later adopted the

---

1. Counsel for defendant represented to the court that the Air Force would not award a contract under the subject solicitation until after June 4, 1984. The projected award date is now June 29, 1984.

2. See transcript of May 10, 1984. Count I alleges that defendant's rejection of plaintiff's proposal was arbitrary and capricious and that defendant made no reasonable effort to accept plaintiff's technical proposal in violation of procurement regulations. Plaintiff contends that this was a breach of defendant's implied contract to consider plaintiff's proposal fairly and honestly. Count II attacks the validity of the RFP and alleges that the RFP violated applicable statutes and regulations and resulted in an arbitrary and capricious evaluation process which caused plaintiff to be treated unfairly.

3. Negotiation procedures were authorized pursuant to 10 U.S.C. § 2304(a)(10) as implemented by DAR 3–210.2 (xiii). Section 2304(a)(10) allows for negotiated procurement rather than formal advertising where "the purchase or contract is for property or services for which it is impracticable to obtain competition." DAR 3–210.2 provides that: "Purchases and contracts may be negotiated ... when it is impossible to draft, for a solicitation of bids, adequate specifications or any other adequately detailed description of the required supplies or services."

4. The first year procurement, including a first article test truck, was for 6 trucks, with an option for 15 more. Second and third year options were 47 and 39, respectively, for a total procurement of 92 trucks.

position that it was to be a negotiated procurement. In any event, the court is of the opinion that the process utilized was intended to be a negotiated procurement pursuant to DAR Section III. The solicitation required offerors to submit technical and price proposals simultaneously. The technical proposals were to be evaluated and, if found acceptable, then the price proposals were to be evaluated. Those technical proposals found unacceptable were to be returned to the offerors along with the unopened price proposals.

After issuance of the solicitation, the Air Force extended the closing date for the submission of proposals to March 9, 1984 and also changed various specifications or restated certain solicitation provisions.[5] Five offerors, including plaintiff, submitted proposals which were evaluated between March 12 and 15, 1984. The Air Force issued amendment 4 to the RFP on April 16, 1984 making several significant changes, including increasing the flow capacity of the trucks from 900 GPM to 1200 GPM, increasing the size and changing the specifications for the filter separator, and changing the location of several fueling and defueling hose reels.

On April 17, 1984 the Air Force notified the offerors of the results of the evaluation of the technical proposals. The proposal of Garsite Products, Inc.[6] was accepted without changes except as required by amendment 4. Another proposal submitted by Tri-State Refueler Co. was found to be reasonably susceptible of being made acceptable, however, two changes were required in addition to those required by amendment 4. The three remaining technical proposals, including plaintiff's, were found to be outside of the competitive range and, therefore, unacceptable. Those three were rejected and the price proposals returned unopened. Plaintiff took serious

issue with the defendant's rejection and upon advice of counsel immediately returned its unopened price proposal to plaintiff. The price proposal has been in defendant's possession ever since.

On or about May 1, 1984 plaintiff met with Air Force personnel to discuss rejection of its proposal. The meeting proved to be unsatisfactory to plaintiff and on May 3, 1984 plaintiff filed suit in this court seeking preliminary injunctive relief.[7] Meanwhile, the Air Force began to review Garsite's and Tri-State's technical proposals and their price proposals as modified by amendment No. 4. The projected award date is presently set for June 29, 1984.

## DISCUSSION

It is well settled in this court that in order for plaintiff to merit equitable or extraordinary relief, i.e., injunctive relief, it must show entitlement to such relief by clear and convincing evidence. Furthermore, plaintiff has the heavy burden of showing that the complained of agency action had no rational basis. *Baird Corporation v. United States*, 1 Cl.Ct. 662 (1983).

In deciding whether to grant injunctive relief, the court must consider several factors. These factors have been discussed in depth in several recent Claims Court decisions and are summarized as follows:

1. The LIKELIHOOD of PLAINTIFF'S SUCCESS on the MERITS;

2. the PUBLIC INTEREST, including any overriding public interest which would warrant, in the exercise of sound judicial discretion, a refusal to grant injunctive relief, even if plaintiff were likely to prevail on the merits;

3. the possibility of IRREPARABLE INJURY to plaintiff if the injunction is not

---

5. *See* RFP FD 2060–83–96301, amendments 1–3.

6. While it is true that DAR 3–507.2(a) prohibits the identification of any offeror to any other offeror under a negotiated procurement prior to award, defendant furnished this information during the limited discovery permitted by the time constraints, or made such information

available to plaintiff and its attorneys during the hearing upon defendant's own volition.

7. Plaintiff is seeking only to have its proposal included in the competitive range and is not seeking to compel award of the contract to itself.

granted, including, but not limited to, the absence of ADEQUATE REMEDY AT LAW, and the possibility of any injury to others if the injunction is granted.

*Drexel Heritage Furnishings, Inc. v. United States,* 3 Cl.Ct. 718 (1983). *See N.V. Philips Gloeilampenfabrieken v. United States,* 1 Cl.Ct. 783 (1983); *Heli-Jet Corporation v. United States,* 2 Cl.Ct. 613 (1983).

■ Furthermore, when the procurement involves national security or national defense interests, as we alleged here, the court must give due regard to those interests in exercising its jurisdiction. 28 U.S.C. § 1491(a)(3). This latter provides a basis, in certain circumstances, for denying injunctive relief even if plaintiff would be otherwise entitled to such relief.

A careful analysis of the pleadings and the documents submitted for *in camera* review, together with the evidence and testimony presented at the hearing has persuaded the court that plaintiff is clearly entitled to equitable relief. Plaintiff has presented sufficient persuasive evidence to enjoin award of the contract until such time as a full hearing on the merits can be heard.

### FACTORS

### I. LIKELIHOOD OF SUCCESS ON THE MERITS

■ The court must consider first whether plaintiff would likely succeed on the merits. This analysis is twofold; whether defendant acted in an arbitrary and capricious manner in rejecting plaintiff's proposal, and whether plaintiff's proposal received fair and equal treatment vis-a-vis the other proposals.

The evidence before the court does not preclude a finding that defendant acted in an arbitrary and capricious manner in rejecting plaintiff's technical proposal. However, as defendant correctly pointed out:

If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.

*M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971). Moreover, where an agency's decisions are technical in nature, judicial restraint is proper. The Supreme Court has observed:

Particularly where we consider a purely factual question within the area of competence of an administrative agency created by Congress, and when resolution of that question depends on "engineering and scientific" considerations, we recognize the relevant agency's technical expertise and experience, and defer to its analysis unless it is without a substantial basis in fact.

*FPC v. Florida Power & Light Co.,* 404 U.S. 453, 464, 92 S.Ct. 637, 644, 30 L.Ed.2d 600 (1972).

At this stage of the proceedings, the court is hesitant to second-guess agency decisions rejecting plaintiff's proposal for failure to comply with the specifications. However, the court will note that during the course of proceedings since April 17, 1984 when plaintiff was advised that its technical proposal had been rejected as unworkable that the ostensibly substantive reasons given by defendant for rejection have diminished in the opinion of the court from 16 to $3\frac{1}{2}$.[8]

It is the latter portion of the analysis that persuades the court that plaintiff's motion should be granted. Evidence brought out at the hearing and confirmed by review of *in camera* documents convinced the court that plaintiff's proposal was treated unfairly from that of a similarly situated offeror, Tri-State, whose proposal was determined to be susceptible to being made acceptable, and, after negotiation,

---

**8.** One of the 16 reasons given in justification of rejecting plaintiff's offer from the competitive range actually contained two reasons. One of the deficiencies was stipulated as not valid at the hearing; however, the other reason continues to be asserted by defendant as a valid reason for excluding plaintiff from the competitive range.

424

was ultimately included within the competitive range. Plaintiff's proposal was rejected without the benefit of discussions, clarifications or negotiations to bring it within the competitive range.

In comparing defendant's evaluation treatment of plaintiff's proposal with the proposal of Tri-State, the court noted several specific instances where there was a disparity of treatment between, in the court's opinion, two similarly situated offerors. Defendant's engineer who conducted the technical evaluation of all five proposals testified that in evaluating the proposals if an item offered failed to comply with the specifications of the solicitation or if, in his judgment, what was offered would not work, then he rejected that item, regardless of whether it was a major or minor deficiency.[9]

Specifically, in one instance, Tri-State offered a hand-operated pump (Tri-State proposal 3.3.2.4.4) rather than an automatic drain system for the sump tank as required by the specifications. (RFP purchase description 3.3.2.4.4). Despite the failure to meet specifications, Tri-State was allowed to modify its proposal through negotiations with defendant and correct the deficiency.[10]

Isometrics, on the other hand, offered an engine and transmission which on paper technically failed to comply with the specifications and was rejected even though there was evidence introduced to the defendant at the May meeting and at the hearing that the engine-transmission combination was compatible and for this application met the specifications. Testimony shows that defendant refused to seriously consider data provided by the manufacturer explaining how the engine and transmis-

sion operated successfully together. The court is of the opinion that defendant's failure to consider this information was not done intentionally with any intent to treat plaintiff unfairly, yet, because of defendant's action, plaintiff's proposal was not treated in as fair a manner as was that of Tri-State. Plaintiff was not given an opportunity to modify its proposal through discussions or negotiations nor was it allowed to clarify its proposal.[11]

A second instance of disparate treatment is the evaluation of the surge suppressors. Tri-State proposed two 2½ gallon 275 psi surge suppressors and provided accompanying commercial literature. Defendant's evaluation comments of Tri-State's proposal suggested that the surge suppressors might be too small for their intended purpose. Tri-State's proposal, however, was not rejected; instead, defendant permitted Tri-State to "verify the flow rate capacity of their surge suppressors or if necessary supply larger units."

Isometrics, on the other hand, proposed two surge suppressors, each of five gallon size, with a statement that "sizes and quantities on other fueling equipment indicate 2 of the 5 gallon-size is adequate." They also included a statement that "If first article testing indicates additional suppressors, they will be provided." Testimony shows that defendant's engineer rejected plaintiff's proposal because "it did not appear that Isometrics knew what it was offering since it was offering two or three surge suppressors not a specific number." Testimony further shows that defendant made no further independent evaluation of plaintiff's proposal. Plaintiff was not giv-

9. The impact of this is that a minor deficiency can be cleared up by a short meeting or even a telephone call from the engineer to the offeror, while a major deficiency would require redesign, or, in the final analysis, prevent defendant from making award without negotiation of the technical proposals, which was its goal.

10. Thus, since, in the opinion of the court, this was a negotiation rather than a clarification, then defendant loses access to its reserved right to make award based on the initial proposals without further negotiations. DAR 3–805.1

through 3–805.3 provide in essence that if negotiations are conducted with one offeror, all other offerors must be given an equal opportunity to negotiate. *See Harris Data Communications, Inc. v. United States*, 2 Cl.Ct. 229 (1983).

11. While plaintiff was granted a meeting on May 1, 1984, the Air Force adhered stubbornly to its original position and refused to listen to plaintiff's explanations or look at supplemental information.

en an opportunity to verify that its proposal would work as was the case with Tri-State.

At the hearing defendant's evaluating engineer pointed out that while he could have sought clarification on several, if not most of Isometrics listed defects, he did not do so because he felt that the cumulative effect of the 16 items identified by him required that he reject the proposal completely by placing it outside of the sphere of the competitive range.[12] The court rejects this "cumulative effect" theory, at least under these facts, and instead chooses to review the deficiencies individually considering only those deficiencies it considers major.[13] The court notes with interest that of the 16 deficiencies originally identified by defendant as substantive reasons for rejection, six and one-half of those were stipulated to at the hearing as having no substantive basis. Testimony shows that another 6–7 required only clarification or minor changes to make them acceptable. Thus, only 3½ possible legitimate reasons existed to exclude plaintiff from the competitive range and therefore any further participation in the procurement. The evidence on those 3½ items is not conclusive. In the court's view only the one-half problem with the sump tank, the problem with the locked-in pressure valve, and possibly the problem with the height of the lift are legitimate, although the court questions whether the specifications provide any or sufficient criteria to reject plaintiff's proposal on the latter point as not meeting the specifications. The evidence on whether plaintiff provided a workable truck compatible with a type III fueling system is inconclusive. Defendant's evaluating engineer testified that he rejected this item because plaintiff failed to provide for the system in the schematics, but that by reviewing the rest of plaintiff's submissions he could piece together a workable system. He further testified that the main reason for rejecting this item of plaintiff's proposal was because he did not feel that plaintiff had

sufficient understanding of the system to offer an acceptable proposal. This conclusion is not supported by the evidence developed at the hearing.

While the court genuinely feels that defendant's evaluating engineer tried to do a conscientious job in evaluating the proposals, it is of the opinion that he gave Tri-State the benefit of the doubt while holding plaintiff to a stricter standard of compliance. There is sufficient evidence, to persuade the court for purposes of this motion that there was disparate or unequal treatment of similarly situated offerors justifying preliminary injunctive relief in favor of plaintiff.

## II. PUBLIC INTEREST

■ The court views the public interest as a balancing of the competing goals of preserving the integrity of the procurement process vs. protecting the government's interest to speedily procure necessary goods. The court has weighed the competing interests and has considered the national defense and national security interests raised in this procurement in reaching its decision.

In light of the relatively short period of time the court believes it would take to allow plaintiff to be reinserted into the procurement process and the relatively minor impact it would have on the procurement, the court considers that the public interest favors granting plaintiff's motion for preliminary injunction. The court specifically rejects defendant's witnesses' testimony as to the impossibility of widening the competitive range to include plaintiff or the great amount of time needed to accomplish it, especially if the parties work together in a conscientious effort to resolve the dispute.

## III. IRREPARABLE INJURY/INADEQUATE REMEDY AT LAW

■ The court does not specifically address these issues in this order because it is

---

12. In contrast, DAR 3–805.2(a) provides:
"When there is doubt as to whether a proposal is within the competitive range, that doubt shall be resolved by including it."

13. Plaintiff's list of 16 deficiencies is meaningless in view of the court's conclusion that after 16, only 3½ might be considered major deficiencies.

not necessary in light of our previous conclusions, except to state that plaintiff does not, in the opinion of the court, have an adequate remedy at law because bid preparation costs do not "adequately compensate the frustrated bidder's losses entirely, since it provides damages only to the extent of the bid preparation costs." *General Electric Co. v. Seamans,* 340 F.Supp. 636 (1972). *See Laboratory Supply Corp. of America v. United States,* 4 Cl.Ct. 136 (1983). *See also Heyer Products Co. v. United States,* 135 Ct.Cl. 63, 140 F.Supp. 409 (1956); 147 Ct.Cl. 256, 177 F.Supp. 251 (1959).

## CONCLUSION

Defendant is, therefore, enjoined from awarding a contract under RFP FD 6060–83–96301 until completion of a trial on the merits or settlement has been reached. The court also preliminarily enjoins defendant from taking any action at all that would be detrimental to plaintiff's interests at this point.

IT IS SO ORDERED.