**CACI FIELD SERVICES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 302–87C.**

United States Claims Court.

June 9, 1987.

Peter M. Kilcullen, Washington, D.C., for plaintiff. Charles P. Revoile and Daniel J. Donohue, of counsel.

Elizabeth S. Woodruff, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and M. Susan Burnett, Washington, D.C., for defendant.

## ORDER

BRUGGINK, Judge.

This bid protest case is presently before the court on defendant's motion for a protective order prohibiting plaintiff's access to any information regarding the technical proposals of other offerors. For reasons set forth herein, defendant's motion is granted in part and denied in part.

## FACTUAL BACKGROUND [1]

On August 22, 1986, the General Services Administration—Federal Supply Service, Office & Scientific Equipment Commodity Center, Special Program Division, issued Request for Proposals No. FCGA–S7–XV333–N (hereinafter "the RFP"), requesting proposals for a negotiated requirements contract for the operation of the General Services Administration ("GSA") Wholesale Distribution Center and Customer Supply Center located in Stockton, California, for a 12–month period, beginning 90 days after notification of award of the contract, and two optional 12–month extension periods, exercisable at the option of the Government. The Notice Concerning Solicitation stated that the solicitation was issued in accordance with OMB Circular A–76, and that an in-house cost assessment was being developed; therefore, a contract might or might not result from the solicita-

tion. The Stockton Wholesale Distribution Center currently is operated by GSA personnel.

On December 5, 1986, CACI submitted its proposal. On March 19th, April 2nd, and April 23rd, 1987, GSA requested further information from CACI. On May 7, 1987, the Contracting Officer ("CO") notified CACI that its proposal had been rejected. The letter stated:

This is to advise you that your technical proposal has been determined to be unacceptable in accordance with FAR 15.610. The following outline highlights the major areas of your offer which have been determined to be unacceptable:

(1) No previous corporate experience of the scope and complexity of the Stockton Wholesale Distribution Center.

(2) Failure to demonstrate an understanding of the scope and requirements of the Performance Work Statement (PWS). (Proposed staffing, materials handling equipment and labor mix failed to demonstrate an understanding of the complexity of the operation.)

(3) Lack of relevant experience by the proposed key personnel.

According to CACI, prior to the time the CO rejected CACI's technical proposal, the proposals of all other offerors had been found to be technically unacceptable and had been rejected. By letter dated May 8, 1987, the CO notified CACI that the Request for Proposals "was cancelled in its entirety on May 7, 1987."

On May 27, 1987, plaintiff filed a complaint in this court alleging, in substance, that (1) the GSA had failed to conduct meaningful discussions with CACI pursuant to 41 U.S.C. § 253b(d) because GSA failed to advise CACI of deficiencies of its proposal or allow CACI to submit revisions to satisfy the Government's requirements pursuant to FAR 15.610(c); (2) defendant violated FAR 15.611 by failing to request a

---

1. Background facts are taken from the complaint and from representations made at oral argument held on May 29, 1987 on plaintiff's motion for expedited discovery. Solely for the purpose of defining the scope of discovery, they will be taken as true.

best and final offer from CACI; and (3) defendant rejected CACI's proposal based on factors not stated as evaluation criteria in the RFP, in violation of 41 U.S.C. § 253b(a) and FAR 15.608(a). CACI's complaint seeks injunctive and declaratory relief[2] "reinstating the solicitation, declaring that CACI's proposal is technically acceptable and was improperly rejected by the defendant, and requiring defendant to continue consideration of CACI as an offeror under the terms of the solicitation and applicable procurement statutes and regulations."

On May 29, 1987, this court conducted a hearing concerning plaintiff's Motion for Expedited Discovery. During that hearing defendant represented that: (1) all other offerors had been rejected by GSA prior to its rejection of CACI's proposal; (2) GSA does not plan to contract-out the operation of the Stockton Wholesale Distribution Center; and (3) the RFP was cancelled on May 7, 1987 following rejection of CACI's proposal because defendant had received no acceptable technical proposal from any offeror.

Among the discovery requests attached to Plaintiff's Motion for Expedited Discovery were the following:

*Request for Documents.*

4. All evaluations, including final drafts, memoranda and/or notes in any form, which were performed on *all* technical proposals submitted in response to the RFP.

5. Each and every technical proposal submitted under the above RFP except that of CACI.

*Witnesses to be Deposed*

8. The individual[s] designated by the General Services Administration, Federal Supply Service, Washington, D.C. to testify on its behalf as to the following materials:

\*   \*   \*   \*   \*   \*

c. The names of the offerors who submitted acceptable proposals.

\*   \*   \*   \*   \*   \*

e. The extent of discussions which were held with other offerors under the RFP.

Defendant filed a motion pursuant to RUSCC 26(c) on June 4, 1987, seeking a protective order prohibiting plaintiff's access to the above information. It specifically sought to block disclosure of any information regarding the technical proposals of other offerors, including, but not limited to, the number and identity of the other offerors, the information contained in the proposals themselves, and the Government's evaluation of the proposals. Plaintiff filed a memorandum in opposition on the same date.

## DISCUSSION

The initial inquiry must be whether the information sought is relevant to the complaint, or reasonably calculated to lead to relevant evidence. *See* RUSCC 26(b)(1); Fed.R.Evid. 401. An accurate summary of the allegations made in the complaint was set out above. CACI's allegations are that GSA failed to conduct meaningful discussions with it; failed to advise CACI of deficiencies or allow it to correct them; failed to request a best and final offer; and relied on factors outside the RFP. All of the allegations made by CACI relate to GSA's relationship with and treatment of CACI, not GSA's relationship and treatment of other offerors as compared to CACI. In fact, according to plaintiff, of the seven potential offerors who were initially interested in submitting proposals under the RFP, only CACI's proposal remained in the competitive range, and GSA had discussions only with CACI. The facts would appear to foreclose an argument of disparate treatment among bidders, but in any event, the court is entitled to rely on the complaint, which makes no such argument. While plaintiff argues that "[w]hether CACI was treated fairly and equally vis-a-vis other offerors is a central issue in this type case," Plaintiff's Memorandum in Opposition at 4, the cases which it cites involve allegations which are not

---

**2.** CACI did not seek a temporary restraining order. By order of June 2, 1987, the court granted plaintiff's motion for expedited discovery but denied the preliminary injunction.

factually similar to those made here. In each there was some allegation of different, unfair treatment among the bidders. *See Drexel Heritage Furnishing v. United States*, 7 Cl.Ct. 134 (1984) (defendant secretly communicated to other offerors); *Isometrics, Inc. v. United States*, 5 Cl.Ct. 420 (1984) (unlike plaintiff there, other offeror allowed to correct deficiency by modifying proposal); *Harris Data Communications, Inc. v. United States*, 2 Cl.Ct. 229 (1983) (if other offerors but not plaintiff had been given opportunity to submit revisions, plaintiff would have been deprived of full, fair consideration); *Kleinerman v. United States Postal Service*, 100 F.R.D. 66 (D.Mass.1983) (alleged that Postal Service obtained proprietary information from plaintiff and passed it to awardee of contract).

This court is well aware that in general the rules of discovery are to be liberally construed. *Schlagenhauf v. Holder*, 379 U.S. 104, 121, 85 S.Ct. 234, 244 (1964). The Supreme Court has also recognized limitations of relevance and privilege on that presumption, however. *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S.Ct. 385, 391–92, 91 L.Ed. 451 (1947); *see Schlagenhauf*, 379 U.S. at 121, 85 S.Ct. at 244. The court concludes that plaintiff has thus far failed to make any showing that full discovery of other bidders' technical proposals is relevant to the resolution of issues it has chosen to adjudicate in this action.

While the court might otherwise be inclined to permit some or all of the requested discovery on a theory that it might lead to other admissible evidence, there are additional considerations in the bid protest context which militate against granting most of the request. RUSCC 26(c)(7) provides that the court may protect a party so that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." This rule reflects the policy behind other statutes and regulations that certain commercially valuable or sensitive information may be preserved from unauthorized use. *See, e.g.,* 5 U.S.C. § 552(b)(4) (1982); 18 U.S.C. § 1905 (1982); Federal Acquisition Regulations (FAR) §§ 15.411, 15.413–1 (1986).

FAR Regulations which govern the procurement at issue offer one reason for the court to protect the information sought. Section 15.411(b) of FAR states that with respect to negotiated procurements,

(b) After receipt, proposals and quotations shall be safeguarded from unauthorized disclosure.

Similarly, Section 15.413–1 provides in part:

15.413  Disclosure and use of information before award.

15.413–1  Alternate I.

(a) After receipt of proposals, none of the information contained in them or concerning the number or identity of offerors shall be made available to the public or to anyone in the Government not having a legitimate interest.

The court is persuaded that, given the right circumstances, it could order disclosure otherwise prohibited to agency employees, and this would satisfy the "legitimate interest" test and thus "authorize" disclosure. Nevertheless, the plain import of these and related regulations and statutes shows that courts must exercise significant caution prior to ordering disclosure of information from other bidders.

Plaintiff's assertions notwithstanding,[3] courts and boards often protect information contained in other bidders' proposals. *See, e.g., Orion Research Inc., v. EPA*, 615 F.2d 551 (1st Cir.), *cert. denied*, 449 U.S.

---

3. During oral argument, plaintiff's counsel asserted that it is well settled that CACI is entitled to the information sought. In the court's view it is far from well settled, and in any event, not concluded by *Isometrics, Inc. v. United States*, 5 Cl.Ct. 420 (1984), cited by counsel. The only discussion of discovery in that opinion recites,

While it is true that DAR 3–507.2(a) prohibits the identification of any offeror to any other offeror under a negotiated procurement

prior to award, defendant furnished this information during the limited discovery permitted by the time constraints, or made such information available to plaintiff and its attorneys during the hearing upon defendant's own volition. 5 Cl.Ct. at 422 n. 6. Plainly, the court had no reason to address the question, much less settle it. Moreover, that case involved substantial allegations of disparate treatment among bidders.

883, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980); *Planning Research Corp. v. United States*, 4 Cl.Ct. 282 (1983); *Audio Technical Services Ltd. v. Dept. of Army*, 487 F.Supp. 779 (D.D.C.1979); *Wom A/C Government Sales, Inc.*, GSBCA No. 8104–P, 85–3 BCA ¶ 18,390 (1985).

Plaintiff cites as support *Planning Research Corp. v. United States*, 4 Cl.Ct. 283 (1983). It is far from clear that that case comports with plaintiff's position, however. There the court specifically disallowed, among other things, discovery of "all four proposals and two 'Best and Final offers' and any material relating to the two bids deemed non-competitive." 4 Cl.Ct. at 288. The discovery allowed was subject to disclosure limitations. Although, as plaintiff points out, the court strongly suggested it would allow testimony at trial beyond the limitations of discovery, it is obvious from the opinion that what was disputed was not the documents referred to above, but access to the mental processes of the evaluators. *See* 4 Cl.Ct. at 295–98. *Planning Research* thus supports nondisclosure.

Cases dealing with the Freedom of Information Act are also analogous. The Act provides nine exemptions from disclosure, one of which is similar to RUSCC 26(c)(7). It protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 522(b)(4).

In *Orion*, the EPA had invited firms to submit technical proposals for the development of a monitoring system to analyze gases. Thirteen firms submitted proposals and three firms, including Orion, were determined to be in the competitive range. Orion's proposal was eventually found technically unacceptable, however, and the contract was awarded to another firm. Pursuant to FOIA, Orion asked EPA to furnish it with a number of documents, including the evaluation plan used by the EPA to score the technical proposals, the awardee's technical proposals and interagency memoranda concerning the proposals. As for the awardee's technical proposal, the circuit court affirmed the lower court's ruling that such information was exempt from disclosure under 5 U.S.C. § 552(b)(4). The court noted that for an agency "to effectively select the most deserving proposal for any contract award, it must be furnished with candid and original bids...." 615 F.2d at 554. If the disclosure were allowed, "competing firms would be less likely to include novel ideas in their responses to solicitation for fear that their confidentiality requests would not be honored and competitors would get the benefit of their innovative theories." *Id.*

Similarly, in *Audio*, 487 F.Supp. 779, the Department of Army issued an RFP for the design and installation of an audio recording system. Bid proposals were submitted by three firms. Although Audio was the low bidder, it did not secure the contract. Audio sought information concerning the awardee's proposal, but it was withheld by the Army under § 552(b)(4). Specifically withheld from plaintiff were the following items from RC's proposal: (1) customer list; (2) RC's design recommendations and identification of prospective problem areas; (3) RC's design concepts including methods and procedures; and (4) biographical data on key RC employees. The court agreed with the Army that disclosure of this type of information would threaten the competitive position of the submitter and clearly thwart the government's interest in obtaining such information in the future. *Id.* at 782.

In *National Parks and Conservation Assoc. v. Kleppe*, the determination of whether commercial information was protectible was expressed as a question of whether disclosure of the information would "impair the government's ability to obtain information in the future or whether it would cause substantial harm to the competitive position of the person from whom the information was obtained." 547 F.2d 673, 677 (D.C.Cir.1976) (citing earlier decision *National Parks and Conservation Assoc. v. Morton*, 498 F.2d 765, 767 (D.C. Cir.1974) (National Parks I)). *See also Gulf & Western Industries, Inc. v. United States*, 615 F.2d 527, 530 (D.C.Cir.1979). Thus, the confidential information exemption serves to encourage cooperation with the government and "protects persons who

submit financial or commercial data to government agencies from the competitive disadvantages which would result from its publication." *National Parks I,* 498 F.2d at 768.

CACI argues that other bidders could not be prejudiced by disclosure since the defendant has withdrawn the solicitation, and announced that it will not resolicit. Taking that argument at face value, the Government still has an interest in non-disclosure of the other bidder's proposal. Defendant represents that because the possibility of contracting out the operation of other centers like Stockton exists, it wants to maintain the cooperation of future bidders in providing useful information concerning the potential contract and protect persons who submit financial or commercial data to government agencies from any competitive disadvantage. In light of the statutes, regulations and precedents discussed, the court does not take that interest lightly. If CACI's submissions are any indication, if the discovery request were granted, it would obtain extremely detailed information concerning the organization, management, key personnel, labor and past corporate experience of competitors.

CACI's surprising adoption without question of defendant's statement that GSA has no intent to relet the solicitation, however, is directly contrary to the relief plaintiff seeks. In its complaint CACI asks for an injunction "reinstating the solicitation." Unless it is willing to waive that request and pursue only a claim for bid preparation costs, the court must assume that within the realm of possible relief is an order directing defendant, regardless of its current "intent," to reopen the solicitation. Presumably at the time it filed its complaint, CACI thought it was entitled to such an order. If that occurs and if reopening extends to other bidders, there is even more reason to be concerned about the potential taint to the solicitation in giving CACI access to its competitors' technical proposals.

After consideration of all these factors, the court concludes that with respect to items 4 and 5 of the Requests for Documents, and category 8c of the Witnesses to be Deposed, CACI has neither demonstrated direct relevance nor overcome confidentiality considerations so as to warrant discovery on a theory that it would lead to admissible evidence. However, with respect to category 8e, "The extent of discussions which were held with other offerors under the RFP," the court denies defendant's motion in part. Plaintiff's theory of recovery entitles it to try to establish that meaningful discussions were not held with it. The court will allow plaintiff to discover the following information:

—"clarifications" or, instruction, sent to other bidders, sanitized in such a way as to protect the name of the bidder and the contents of its proposal;

—general or specific instructions to evaluators with respect to how to rate proposals;

—information or testimony regarding the frequency and general content of conversations with other bidders. Defendant may decline to answer such inquiries insofar as answers would inevitably and directly disclose the identity of another bidder, or the details of its proposal.

It is SO ORDERED.