**CACI FIELD SERVICES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 302–87C.**

United States Claims Court.

July 17, 1987.

Peter M. Kilcullen, Washington, D.C., for plaintiff. Daniel J. Donohue, of counsel.

Elizabeth S. Woodruff, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Thomas W. Petersen, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This bid-protest case is presently before the court upon CACI's motion pursuant to RUSCC 37(a) to compel production of certain documents concerning defendant's evaluation of its proposal. For reasons set forth herein, plaintiff's motion is granted in part and denied in part.

### FACTUAL BACKGROUND [1]

On December 5, 1986, CACI submitted a proposal to the General Services Administration ("GSA") pursuant to a Request For Proposals ("RFP") for a negotiated requirements contract for the operation of the GSA Wholesale Distribution Center and Customer Supply Center located in Stockton, California. The contract would run for a 12–month period, beginning 90 days after notification of award of the contract, with two optional 12–month extension periods, exercisable at the option of the Government. On March 19, April 2 and April 23, 1987, GSA requested further information from CACI. On May 7, 1987, the Contracting Officer, Jeanne Deck (the "CO"), notified CACI that its proposal had been rejected. Soon thereafter, the CO notified CACI that the RFP was cancelled.

On May 27, 1987, plaintiff filed a complaint in this court alleging that GSA had failed to conduct meaningful discussion with CACI, failed to request a best and final offer, and failed to evaluate CACI's proposal based on factors stated in the RFP, all in violation of applicable procurement statutes and regulations.

Plaintiff filed a motion for expedited discovery along with its complaint. Among the discovery requests attached to Plain-

---

1. The facts and procedural history of this case are discussed in this court's order of June 9, 1987, 12 Cl.Ct. 440, and will not be repeated except as relevant to this order.

tiff's Motion for Expedited Discovery were the following:

*Request for Documents*

1. Any GSA internal written documents, correspondence, or notes in any form concerning the decision to reject CACI's proposal; and the decision to cancel the solicitation.

2. All written documents, memoranda, notes, interoffice correspondence in any form, concerning CACI's technical proposal including any deficiencies, evaluations, or other comments thereon.

3. All written documents, memoranda, notes, score sheets, or other records in any form concerning the evaluation of CACI's technical proposal under RFP FCGA–S7–XV333–N.

*Depositions*

1. Jeanne E. Deck, Contracting Officer.

6. All individual(s) who reviewed, discussed or commented upon CACI's technical proposal.

7. All individual(s) who performed the evaluation of CACI's technical proposal.

In a telephone conference on June 8, 1987, Government counsel advised the court that documents responsive to plaintiff's request for documents would be provided pursuant to a protective order, the details of which would be agreed upon by the parties. The parties reached agreement upon the terms of the protective order, and it was entered by the court on June 16, 1987. Basically, it provides that information supplied during discovery would be used solely for the purpose of this litigation and cannot be communicated to anyone other than current counsel of record for CACI.

On June 15, 1987, defendant produced copies of all written comments and summaries prepared by members of the technical

review panel ("TRP") and other evaluators regarding the sufficiency of CACI's technical proposal. Certain information was circled to indicate that it was being released subject to the protective order. On June 18, 1987, in response to the court's order of June 9, 1987,[2] defendant provided plaintiff with a copy of the Source Selection Plan ("SSP") used by the TRP to evaluate all proposals which were submitted in response to the solicitation.[3] Also on June 18, 1987 and continuing on June 23, 1987, the deposition of the CO was taken. The documents provided by defendant which were made exhibits to the deposition contained redacted portions. Government counsel advised CACI that it had deleted from these documents, as privileged, the following information: (1) the names of the evaluators, (2) the range of scores which could be applied by the TRP to the various evaluation factors as set forth in the source selection plan, (3) the scores as applied to CACI's technical proposal by the TRP, and (4) information concerning other offerors.

During her deposition, the CO explained the circumstances surrounding the evaluation of CACI's technical proposal. After GSA issued the RFP, an SSP was prepared which set forth the factors and subfactors to be used in evaluating the technical proposals. Each factor and subfactor was assigned a certain number of possible points. Although not entirely clear from the deposition, apparently based upon the total points received, the proposal was assigned a rating. CACI's proposal was evaluated five times and CACI's score was revised on at least two occasions, specifically in February of 1987 and on April 21, 1987. Each time CACI's score was revised, those members of the TRP revising his or her score set forth reasons for that action in the narrative comments. In addition to the

---

**2.** The order of June 9, 1987 concerned document and deposition requests which were aimed at gaining information regarding the content and evaluation of other technical proposals besides CACI's. The court held that plaintiff had failed to demonstrate direct relevance or overcome confidential commercial considerations to warrant discovery of other offerors' proposals. *CACI v. United States,* 12 Cl.Ct. 440, 445 (1987). The court did not limit discovery regarding GSA's evaluation of CACI's technical proposal.

**3.** The order of June 9, 1987 provided that plaintiff was entitled to discover "... general or specific instructions to evaluators with respect to how to rate proposals...." *CACI v. United States,* 12 Cl.Ct. 440, 445 (1987).

TRP,[4] the contracting officer requested three other persons to review all the offerors' proposals and give summary comments to the TRP for consideration during its February meeting. During the February meeting of the panel, CACI's technical proposal was rescored and the initial "Superior" rating was apparently changed to a "Satisfactory" rating. On March 2, 1987, based on the February 1987 reevaluation, all offers with the exception of CACI were excluded from consideration.[5] After a series of information exchanges, CACI's proposal was reviewed on April 2, April 21, and April 30, 1987. During the April 21, 1987 review, CACI's score was revised but apparently the technical proposal again qualified for a "Satisfactory" rating. On

May 7, 1987 the CO determined CACI's technical proposal to be unacceptable.

On July 1, 1987, plaintiff filed a motion to compel production of the following information which had been omitted from documents previously produced (exhibit references are to documents attached to the Deck deposition):

   a.  Points, scores and rankings (Exhibits 1, 3, 4, 7, 8, 15 and 18);

   b.  Names of non-Technical Review Panel evaluators (Exhibit 5);

   c.  Reasons for rejection of all proposals (Exhibit 24).

Defendant opposed plaintiff's motion on July 8, 1987, claiming the material sought was not only irrelevant but protected from disclosure by the executive privilege.[6]

**4.** According to the parties, although the TRP consisted of six individuals, after the initial review only four persons reconvened and reviewed the proposals. According to defendant, two Public Building Services members of the TRP did not participate in any review sessions after the initial evaluation because those areas in which the contracting officer expressed the most concern with respect to the adequacy of CACI's proposal were outside of the areas of expertise of those persons.

**5.** Plaintiff alleges that at this point on March 2, 1987 the CO made a competitive range determination. *See* Exhibit 8. Defendant counters that no competitive range determination was ever formally made and that on March 2, 1987 the CO merely determined that all offerors with the exception of CACI could not hope to come within a competitive range.

**6.** Defendant attached to its opposition an affidavit of Terence C. Golden, Administrator of GSA which stated in part:

   5. In the course of discovery in these legal proceedings, I have become aware that CACI has requested GSA to identify, for purpose of examination at a deposition or otherwise, all individuals who performed the evaluation of CACI's technical proposal and prepared the source selection plan, and to disclose all documentation related thereto.

   6. For reasons to be discussed, I hereby assert a formal claim of privilege regarding the identity of these experts and related scoring judgments and data, and respectfully request that a protective order be issued which would preclude testimony in this area as well as protect the identity of these individuals in any other proceedings related to this litigation.

   7. Because of the highly specialized and technical nature of warehouse operation management, GSA has a very limited pool of expert technical evaluators available to ensure

that GSA obtains the services necessary to satisfy the needs of the Government in this important area. The opinions and recommendations of these few experts must play a vital role in the deliberative process of selecting proposals for award of such Government contracts.

   8. If inquiry into the identity of GSA experts and their specific methods of evaluation is permitted, the disclosure of confidential discussions and mental processes during their technical review will prejudice future contracting reviews of this nature, in which these very same experts will participate. GSA is under an obligation to perform A–76 reviews on each of its warehouse operations. With the disclosure of technical panel preferences and predilections, there is a great risk that future proposals may merely seek to "play back" or "parrot" panel expectations without fully satisfying Government requirements.

   9. If confidential scoring data are released, CACI could use this information, relevant to *each evaluation factor*, to strengthen its current and any future offers in these areas. CACI would thus have a significant and unfair competitive advantage. Furthermore these weights, as set forth in the source selection plan, are not likely to change on future procurements because they accurately reflect the operations of the current national network of supply distribution centers.

   10. It is also in the public interest to foster free and frank consideration of proposals submitted to the Government. Such free and frank consideration can only be had when the identities of reviewers and their scoring decisions can be withheld from unnecessary and unwarranted public scrutiny. The evaluation process would be severely inhibited if GSA was not able to keep this information confidential. Disclosure would serve to discourage

## DISCUSSION

### 1. *Relevancy*

Rule 26(b)(1) of the RUSCC makes discoverable "any matter not privileged, which is relevant to the subject matter involved in the pending action." Thus before examining the executive privilege claim, the court must inquire whether the information sought is relevant since "matters of privilege can appropriately be deferred for definitive ruling until after the production demand has been adequately bolstered by a general showing of relevancy." *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C.Cir.1968); *see also Shipkovitz v. United States*, 1 Cl.Ct. 400, 401 (1983).

▮▮▮ At the outset, the court notes that defendant correctly states that the standard of review applied to the CO's decision is very narrow: a CO has wide discretion in the evaluation of offers and the court should only intervene when the decision had no rational basis. *See Keco Indus., Inc. v. United States*, 203 Ct.Cl. 566, 574, 492 F.2d 1200, 1203–04 (1974); *Southwest Marine, Inc. v. United States*, 3 Cl.Ct. 611, 613 (1983). The narrowness of the nature of our review does not foreclose discovery, however, so long as it is reasonably calculated to lead to evidence relevant under that standard. Defendant basically takes the position that it is satisfied that the CO's decision, standing alone, demonstrates a reasonable basis for the decision. What defendant overlooks, however, is that plaintiff has the right to impugn the apparent correctness of that decision by collateral evidence. Defendant is asking the court at the discovery stage to find conclusively that the information cannot possibly be relevant, or lead to other relevant information. That the court is unwilling to do.

### a. *Points, scores and rankings (Exhibits 1, 3, 4, 7, 8, 15 and 18)*

▮▮▮ Plaintiff seeks to gain access to the maximum points assigned in the SSP to the various factors and subfactors and the point scores actually assigned by the evaluators to CACI's technical proposal. CACI argues that these "points" or "ratings" are relevant to their claim for two reasons: one, the points assigned in the SSP to the various factors and subfactors indicate the *weights* to be given by the evaluators; these should be compatible with the weight given to the evaluation factors as stated in the RFP. Second, it claims that the individual points awarded to plaintiff have relevance in determining whether CACI was properly apprised of deficiencies or weaknesses in its proposal. According to CACI, the narrative comments do little to indicate the relative strengths and weaknesses of its proposal as perceived by the evaluators. Defendant counters that the points are irrelevant since nowhere in CACI's complaint is it alleged that there were any irregularities with respect to the scoring of its technical proposal. According to defendant, the scores only have relevance with respect to how CACI's proposal was rated overall as compared with other bidders.

The court agrees that the point valuations sought by plaintiff are potentially relevant. With regard to the SSP, according to the Federal Acquisition Regulations ("FAR"), at a minimum, the SSP should include "... a statement of the proposed evaluation factors and their relative importance...." FAR 15.612(c)(4). Moreover, evaluation factors and their relative importance in the SSP should be reflected in the solicitation itself. *See* FAR 15.605(e) ("The solicitation shall clearly state the evaluation factors, including price or cost and any significant subfactors, that will be considered in making the source selection and their relative importance.").

Although FAR 15.605(e) states that the solicitation "need not" disclose the numerical weights which may be employed in the evaluation of proposals in the solicitation, clearly FAR contemplates that the contractor should be aware of the relative weight each factor is given. Plaintiff argues that precise numerical weights could provide a

the experts' frank and uninhibited analysis and discussion of proposals in the future, thereby arresting the free flow of advice and recommendation upon which the workings of Government rely on a regular basis.

more objective standard to determine whether the solicitation was fairly prepared and whether CACI's proposal was fairly evaluated; CACI's individual scores, rather than narrative commentary, might be relevant to the degree of correspondence between the solicitation and the SSP.

Although defendant argues that the "specific scores given to CACI's proposal ... [are] relevant only with respect to how CACI's proposal was rated overall as opposed to remaining offerors," it is far from clear in the CO's deposition that scores were significant only for *ranking* purposes and not for *evaluating* CACI's technical proposal as against the SSP. Various exhibits already exchanged make clear that the numbering had an impact on the decision to accept or reject the proposal. What the record suggests thus far is that the CO relied at least in part on the precise numerical scoring to evaluate CACI; that a maximum possible score was assigned to each factor and subfactor; that the factors and subfactors were weighed differently; that the defendant is still unclear as to whether a competitive range was ever established or whether CACI was in it; that the "single most important factor" may arguably have shifted during the review, as reflected in the undated memorandum of the TRP chairman to the CO; and that CACI's proposal was reevaluated and the scores changed on April 21, 1987, after all other offerors had been eliminated, and thus at a point where that ranking would not be a motivation for scoring. Without judging the ultimate accuracy or importance of these points of argument, it suffices for the court to say that at the discovery stage, it is far from clear that the numbering system and its application to CACI is irrelevant.

Insofar as CACI seeks the point scores or names of other offerors, however, that request is denied for the reasons set out in the June 9 order.

b.  *Name of Non-Technical Review Panel Evaluator (Exhibit 5)*

■ CACI seeks to discover the name of a non-TRP evaluator since this individual arguably influenced the CO to reevaluate CACI's proposal. According to the plaintiff, without disclosure of this name, CACI is unable to depose the person or to ascertain what qualifications that person had for conducting a technical review of CACI's proposal. Accordingly, since the undisclosed person's comments were considered by the CO, it goes to the heart of her determination that CACI's proposal was unacceptable. Defendant opposes disclosure arguing that CACI was provided the comments of the non-TRP members and the extent to which the CO relied upon these comments can be determined from her testimony. Any further information is, according to defendant, irrelevant to this litigation. The court agrees that plaintiff should not be entitled to the name or names of the reviewers. As discussed *supra*, our narrow scope of review focuses the court on the reasonableness of the *CO's* decision. That determination should be achievable without deposing the reviewers. Because of the arguably unique circumstances occurring after the initial review, however—the TRP changed composition, and non-members may have influenced a change in procedure—the court will reserve judgment on whether limited information as to the position and qualifications of the non-TRP member may be disclosed. Defendant is directed to provide that information for *in camera* inspection.

c.  *Reasons for rejection of other proposals (Exhibit 24)*

■ Although the reasons for rejection of CACI's proposal have been disclosed, it seeks access to the reasons for rejection of other proposals which CACI says are contained in Exhibit 24. Plaintiff claims that this information is relevant because it believes that all offerors were rejected on at least one common basis, the lack of corporate experience. According to CACI such information would be relevant to the rationality of the CO's decision to reject CACI's proposal on that basis. Defendant, on the other hand, argues that whether another offeror failed to establish sufficient corporate experience to meet the requirements of the RFP is totally irrelevant

to the reasonableness of the CO's rejection of CACI's proposal for the same reason.

Initially, it is not apparent to the court how Exhibit 24 relates in any way to the CO's reasons for rejection of other proposals. In any event, the court views CACI's request for information regarding the evaluation of other proposals as covered by its order of June 9, prohibiting discovery of the technical proposals of all other offerors and all evaluations of other technical proposals. *CACI,* 12 Cl.Ct. at 442–43. While the evaluation of other proposals on this factor may have been relevant if those other bids had been found acceptable in that respect and if CACI alleged discriminatory treatment, here no such allegations are made. In brief, the CO's treatment of other bidders is not "relevant to the resolution of issues [CACI] has chosen to adjudicate in this action." *Id.* at 443.

Therefore, the court concludes that the following items meet the threshold relevancy requirements of RUSCC 26(b)(1): points, scores and rankings only with respect to CACI, or to generic standards and scores contained in the SSP (Exhibits 1, 3, 4, 7, 8, 15 and 18). Information on the background and qualifications of the non-TRP evaluator will be reviewed *in camera.*

### 2. *Executive Privilege*

Having determined that some of the information sought by plaintiff is relevant, the second level of inquiry is whether it is protected from disclosure by the GSA Administrator's invocation of the executive privilege.

■ The executive privilege expresses a "release from requirements common to private citizens or organizations." *Kaiser Aluminum & Chem. Corp. v. United States,* 141 Ct.Cl. 38, 46, 157 F.Supp. 939, 944 (1958)[7]. This privilege, which applies to inter- and intra-agency deliberative communications or official information, protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Carl Zeiss, Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.D.C.1966), *aff'd,* 384 F.2d 979, *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967) (*quoted in NLRB v. Sears,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975)); *see also Mead Data Cent., Inc. v. Department of Air Force,* 575 F.2d 932 (D.C.Cir.1978) (policy deliberative agency document need not be disclosed); *Kaiser,* 141 Ct.Cl. at 46, 157 F.Supp. at 945 (privilege protects "intra-office" advice on policy). The privilege reflects two concerns. One is the encouragement of "open, frank discussion between subordinate and chief concerning administrative action." *Kaiser,* 141 Ct.Cl. at 48, 157 F.Supp. at 946. *See also Merrill v. Federal Open Mkt. Comm.,* 565 F.2d 778, 683 (D.C.Cir.1977). Second, it

---

**7.** The term "executive privilege" is used here to describe the properly invoked "deliberative process privilege" as found in *Kaiser Aluminum.* The executive privilege also denotes the presidential privilege as it was invoked in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), and the privilege restricting disclosure of documents that contain military or diplomatic secrets. *See United States v. Reynolds,* 345 U.S. 1, 11, 73 S.Ct. 528, 533–34, 97 L.Ed. 727 (1953). Courts generally distinguish, however, between the "deliberative process" privilege and the "state secrets" privilege. *See Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336 (D.C.Cir.1984). According to commentators, the creation of the executive deliberation privilege can be traced to *Kaiser. See* Development in the Law of Privileged Communications, 98 Harv.L.Rev. 1405, 1620 (1985); Note, "Discovery of Government Documents and the Official Information Privilege," 76 Colum.L.Rev. 142, 156 (1976). This privilege sub-

sequently has been widely recognized in Federal courts. *See, e.g., Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318 (D.D.C.1966), *aff'd,* 384 F.2d 979, *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). Exemption 5 of the Freedom of Information Act ("FOIA") recognizes the deliberative process privilege by excluding "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (1982). The only distinction between the deliberative process privilege when arising under FOIA and the privilege when invoked in this court is that in the context of FOIA no affidavit from the agency head is necessary to invoke it. *See Deuterium v. United States,* 4 Cl.Ct. 361, 363 (1984). However, in effect, Exemption 5 is co-extensive with the common law deliberative process privilege. *See McClelland v. Andrus,* 606 F.2d 1278, 1287 n. 54 (D.C.Cir.1979).

seeks to protect the executive branch from judicial interference. *United States v. Nixon*, 418 U.S. 683, 708, 94 S.Ct. 3090, 3107–08, 41 L.Ed.2d 1039 (1974); *Carl Zeiss*, 40 F.R.D. at 325–26.[8] With respect to the first concern, relevant here, the material to be protected must comprise part of the "deliberative process"; that is, the interchange of recommendations and deliberations that contribute to the decisionmaking or policymaking process. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–54, 95 S.Ct. 1504, 1516–18, 44 L.Ed.2d 29 (1975); *Kaiser*, 141 Ct.Cl. at 46–49, 157 F.Supp. at 945–47. Accordingly, factual statements fall outside the scope of the privilege. *See Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Boeing Airplane Co. v. Coggeshell*, 280 F.2d 654, 660–61 (D.C.Cir.1960); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F.Supp. 577, 582 (E.D.N.Y. 1979). The rationale behind this fact-opinion distinction rests on the theory that disclosure of facts neither hinders the free flow of advice in government decisionmaking nor involves improper judicial interference with that process. *See* Note, "Discovery of Government Documents and the Official Information Privilege," 76 Colum. L.Rev. 142, 162 (1976).

■ The executive privilege, however, is a qualified one. *Kaiser*, 141 Ct.Cl. at 49, 157 F.Supp. at 946. The privilege can be overcome upon a showing of evidentiary need weighed against the harm that may result from disclosure. *Smith v. Federal Trade Comm'n*, 403 F.Supp. 1000, 1015–16 (D.Del.1975); *FTC v. Bramman*, 54 F.R.D. 364 (W.D.Mo.1972). Additionally, some courts, including this one, impose the procedural limitation that the privilege must be invoked by the head of the department or agency which has control over the matter, after personal consideration. *See United States v. Reynolds*, 345 U.S. 1, 7–8,

73 S.Ct. 528, 532, 97 L.Ed. 727 (1953); *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 (5th Cir.1981); *Cetron Elec. Corp. v. United States*, 207 Ct.Cl. 985 (1975); *Deuterium v. United States*, 4 Cl.Ct. 361 (1984). *But see Department of Energy v. Brett*, 659 F.2d 154, 155 (Temp. Emer.Ct.App.1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 456 (1982).

■ Here, the executive privilege was invoked by the Administrator, Terence C. Golden. Golden claims privilege as to the identity of experts who performed the evaluation of CACI's proposal and prepared the SSP and their scoring judgments and data. According to Golden, "disclosure of technical panel preferences and predilections" would pose the "risk that future proposals may merely seek to 'play back' or 'parrot' panel expectations without fully satisfying Government requirements." Golden Affidavit at ¶ 8. Moreover, disclosure of scoring data to CACI would give it a "significant and unfair competitive advantage." Golden Affidavit at ¶ 9. The court has determined, however, after careful examination of the redacted version of the exhibits filed by plaintiff that the information is not protected by the executive privilege since it does not reflect "recommendations and advice on program policy." *Kaiser*, 141 Ct.Cl. at 45, 157 F.Supp. at 944. Moreover, any concerns going more to the integrity of the bidding process in general can be accommodated by limiting disclosure to plaintiff's counsel.

Initially, it must be noted that plaintiff has received copies of all written comments and summaries prepared by members of the TRP and other evaluators regarding the sufficiency of CACI's technical proposal. Plaintiff also has a copy of virtually the entire SSP. During Deck's deposition, plaintiff obtained without objection significant detail in a narrative form about ranking of factors and subfactors. In applying those factors, the evaluators produced both

---

**8.** In *Kaiser* the Court of Claims focused on the interest behind the executive privilege in protection of the deliberation process in executive or agency decisionmaking. 147 Ct.Cl. at 46, 157 F.Supp. at 947. In *United States v. Nixon*, the Supreme Court recognized this interest but also incorporated the separation of powers doctrine as a basis for the presidential privilege claim.

418 U.S. at 708, 94 S.Ct. at 3107–08. Other courts have grounded all executive privileges, presidential, deliberative and state secrets on the separation of powers doctrine. *See, e.g., Carl Zeiss*, 40 F.R.D. at 324–26; *Association for Women in Science v. Califano*, 566 F.2d 339, 343 (D.C.Cir.1977). *See generally*, Developments, *supra* note 7, 98 Harv.L.Rev. at 1621–22.

numerical and narrative evaluations, which presumably correspond. Defendant has redacted only the numerical evaluation.

Although the government has not waived any objection to production of specific numbers, it has certainly waived an objection based on the argument that all details as to weighting and ranking are somehow privileged. From the court's perspective, providing the numbers is a difference in *degree* of specificity but not in the *kind* of information already produced. This substantially attenuates the privilege argument.

More importantly, however, the court concludes that the type of information sought to be protected here is not within the contemplation of the privilege. The numerical template set out in the SSP cannot possibly, by itself, be a recommendation or piece of advice leading to a policy determination. Its very existence reflects advice and recommendations leading to a *previous* policy determination. Once it is arrived at, it is no longer "in process." It becomes a fact, not an opinion.

Similarly, CACI's own numerical rating is hopefully an evaluation based on an objective application of the SSP. It is presumably not, in the context of a public bidding process, advice going toward a policy determination. That is particularly apparent given the amount of information defendant has already made available. Moreover, the FAR expresses a clear policy of divulging significant evaluation factors within the solicitation, apparently on the assumption that this does not denigrate the procurement process.

The court is not persuaded that provision of specific numbers in addition to what already has been disclosed would discourage frank and uninhibited analysis and discussion of proposals in the future. Nevertheless, because the court recognizes the legitimacy of Golden's concerns about maintaining fairness in the bidding process and ensuring that bids are not rote recitations, access to previous discovery was limited to CACI's counsel of record. These same considerations, while not necessarily warranting invocation of the executive privilege, provide a basis for also limiting the extent or method of disclosure at issue here. As explained in the order of June 9, the Government has an interest in maintaining candid and original bids. Consequently, information regarding scoring will be released and seen only by CACI's counsel of record.

Finally, the court has previously found that the names of evaluators, the names of other offerors and the evaluation of their proposals, need not be disclosed. Consequently, the privilege need not be addressed in that regard.

### CONCLUSION

Based on the foregoing, plaintiff's motion is denied in part and granted in part as follows:

1. Exhibit 1—Defendant will provide a copy of the SSP which includes all scoring information.

2. Exhibits 3, 4, 7, 8, 15 and 18 will be provided in a form containing CACI's scores. Scores as to other offerors and the names of reviewers will be omitted.

3. Exhibit 24—no additional information need be furnished.

4. Exhibit 8a—a copy of the exhibit showing information as to scoring and ranking will be furnished by the court at the pretrial conference. Information as to the names and numbers of other offerors will be deleted.

5. The name of the non-TRP reviewer as reflected in Exhibit 5 will not be furnished to plaintiff or the court. Defendant will furnish the court a sanitized statement of the reviewer's position, job description and qualifications on or before August 3, 1987.

6. All information furnished pursuant to this order will be subject to the protective order of June 16, 1987. Plaintiff's counsel of record may not divulge the information absent further order of the court.

It is so ORDERED.